Rex CENTER, Appellant,

v.

Ellis LINKOUS, an Infant, etc., Appellee.

Rex CENTER, Appellant.

v.

Raymond MOORE, an Infant, etc., Appellee.

Rex CENTER, Appellant,

v.

Hobart SPAULDING, an Infant, etc., Appellee.

Rex CENTER, Appellant,

v.

Jerold LINKOUS, an Infant, etc., Appellee.

Rex CENTER, Appellant,

v.

George STAMPER, an Infant, etc., Appellee.

Court of Appeals of Kentucky.

Nov. 9, 1956.

---

Elmer Drake, Lexington, Everett L. Miller, Campton, for appellant.

Beverly P. White, Winchester, J. Douglas Graham, Campton, for appellee.

CULLEN, Commissioner.

Five teen-age boys suffered severe burns in an explosion of liquefied petroleum gas which escaped from a large storage tank owned by one Rex Center. The boys recovered judgments against Center, upon jury verdicts, in the amounts of $50,000, $12,500, $4,000, $4,000, and $2,500, respectively. Center has appealed, asserting as his only ground of error the failure of the court to sustain his motions for directed verdict. He contends there was insufficient evidence of negligence.

Center maintained a 1,000 gallon storage tank for liquefied petroleum gas near his general store in the village of Campton, Kentucky. The tank rested upon four pillars composed of concrete building blocks, which were not bound together with mortar. There was an intake valve on the top of the tank, and an outlet valve on the bottom, from which gas was withdrawn to fill cylinders for domestic use of Center's customers. The opening in the tank in which the outlet valve was screwed was not fitted with an excess flow valve which would automatically stop the flow of the gas from the tank in the event of a break or defect in the outlet valve, or of a failure of someone to close the outlet valve.

On the night of January 15, 1954, one end of the storage tank fell or was forced to the ground, and the outlet valve broke off, permitting the gas to escape. When the gas came from the tank it vaporized, forming a visible cloud or fog. The vaporized gas flowed along the ground down a slope and into and across a street behind Center's store. The plaintiff boys were riding in a car along this street. When the car entered the cloud of vaporized gas the motor stopped. The driver attempted to start the motor without success. After a few moments the boys decided to get out of the car but before they could get out there was a terrific explosion which burned the boys severely. The explosion destroyed the Center store building and did considerable damage in the vicinity.

Two investigators for the office of the State Fire Marshal testified to the fact that the storage tank was resting upon unmortared concrete blocks, and that there was no excess flow valve in the outlet opening. They introduced in evidence

certain sets of regulations of the State Fire Marshal pertaining to the storage and handling of liquefied petroleum gas. One of these sets of regulations, which was identified as applying to "Systems utilizing containers other than I.C.C.," prescribed that storage tanks must be provided with substantial masonry or non-combustible structural supports on a firm masonry foundation, and that the outlet opening must be equipped with an excess flow valve or automatically closing internal valve.

Appellant maintains he cannot be charged with negligence in failing to comply with the regulations because there was no proof that his tank was "other than I.C.C." and thus subject to the regulations. This argument is made for the first time on the appeal. There was no controversy in the trial court as to the applicability of the regulations. In his motion for a directed verdict the appellant did not raise this point, and in the instructions he offered the applicability of the regulations was recognized. However, regardless of all this, we think it is clear from the regulations themselves that "I.C.C." containers are those used for the purpose of *transporting* liquefied petroleum gas, and therefore the appellant's tank, being for storage only, was clearly "other than I.C.C."

The evidence warranted the conclusion that the tank fell from its supports because, by reason of alternate freezing and thawing of the ground in the January weather, the footing for the unmortared cement blocks shifted, causing them to give way under the weight of the tank. The evidence was clear, also, that the tank was not equipped with any safety devices to prevent the escape of the gas in the event of a breaking of the outlet valve. Even in the absence of the regulations, this might be sufficient evidence of negligence, keeping in mind the high degree of care required in handling such a dangerous substance.

The appellant makes some suggestion that there was a failure to establish causation. However, we think the evidence established beyond any question that the explosion was the direct result of the negligence which permitted the gas to escape and flow into the street.

The judgments are affirmed.